IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL SCOTT, )<br>)<br>      Plaintiff, )<br> -v- )<br>)<br>WILLIAMS, et al., )<br>)<br>      Defendants. ) | Civil Action No. 1:23-cv-1015<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff, though his attorneys, states as follows:

### NATURE OF ACTION

1.  This is a re-filing of action number 1:15−cv−02524 from this same court. The prior action was dismissed without prejudice to refile on February 7, 2023. Plaintiff moved to reinstate on February 17, 2023. The dismissal without prejudice is set to convert to a dismissal with prejudice on February 21. In the prior case, a settlement was reached. Defendants have not executed the settlement agreement or otherwise satisfied its terms. Plaintiff is filing this case to ensure he may enforce the terms of the settlement or, alternatively, proceed as set forth below.

2.  This is an action under Eighth Amendment of the United States Constitution seeking relief under 42 U.S.C.§ 1983 to redress deprivations of Plaintiff's civil rights by the cruel and unusual punitive acts of the Defendants, all while purporting to act under color of law.

### JURISDICTION AND VENUE

3.  This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3).

4. The federal court for the Northern District of Illinois is an appropriate venue under 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**PARTIES**

5. Plaintiff, Daniel Scott is currently a prisoner at the Stateville Correctional Center.

6. Under Illinois law, the Illinois Department of Corrections is responsible for Plaintiff's safety and security.

7. Defendant Lieutenant Donald Williams is sued in the alternative to Defendant Lieutenant DeWayne Williams. In reports filed with the prison, Donald Williams is named as the corrections employee who sprayed Plaintiff with a chemical agent. He is sued in his individual capacity.

8. Defendant Jacob Walls is employed as an officer at the Stateville Correctional Center and was a subordinate of Defendant Williams and he is responsible for Plaintiff's safety and security and supervision. He is sued in his individual capacity.

9. Defendant Christopher Whitfield is an employee/officer at the Stateville Correctional Center. He was subordinate to Defendant Williams and is responsible for Plaintiff's safety security and supervision. He is sued in his individual capacity.

10. Defendant Randy Malkowski was an employee/Lieutenant in F-house at Stateville at the time giving rise to his complaint. Malkowski is responsible for Plaintiff's supervision, safety and security. He is sued in his individual capacity.

11. At all times relevant to this action, these Defendants acted under color of law and acted deliberately to Plaintiff's right to be safe, secure and free from assault and excessive force by prison officials and were also deliberately indifferent to Plaintiff's serious medical needs.

**Background**

12. Stateville Correctional Center is located in Hill Crest, Illinois. Inmates are housed in six housing units, including: Frank House (F-house) Edward House (E-house), Delta House (D-house), Charlie House (I-house), Bravo House (B-house) and X-house.

13. On September 10, 2013, Plaintiff was housed in E-house at cell 518. At approximately 1:00 p.m. that day, the entire Stateville facility operated on a level-1 lock down. Level-1 lockdown is a heightened security status where all inmates are confined to their cells. Any movement whatsoever requires inmates to be cuffed behind their backs.

14. Pursuant to IDOC policy, when conducting an occupied cell search on level-1 lockdown, staff is required to secure inmates in handcuffs before opening the cell door.

15. TLevel-1 lockdown searches require that inmates first be handcuffed behind their backs and removed from the cell prior to the cell "shakedown".

16. Pursuant to Illinois Department of Corrections Administrative Directive15.01.111, "In every instance that a living area is searched, regardless of whether contraband is confiscated, the employee conducting the search shall initiate a shakedown Record/Confiscated Contraband, DOC 0300, at the time of the search."

17. If contraband is found, the policy provides the employee shall: "(a) provide as much of the information required on the left side of the DOC 0300 that is known or available, (b) sign and date the DOC 0300; (c) give the fifth copy to the offender; (d) attach the fourth copy to the disciplinary report if one is issued; and (e) attach the remaining copies to the contraband and turn it over to the shift supervisor in accordance with Administrative Directive 05.01.112." If no contraband is found, the employee shall "(s) provide as much of the information required on the left side of the DOC 0300 that is known or available and indicate no contraband was found; (b)

sign and date the DOC 300; (c) give the fifth copy to the other ticket and; (d) turn the remaining copies over to the shift supervisor."

18. According to the Defendant Lt. Williams' incident report dated September 10, 2013, Defendants Walls and Whitfield were assigned to search Plaintiff's cell at E518. According to the language used in the Incident Report, cell 518 was purportedly "targeted by Intell."

19. At the time in question, Plaintiff used the toilet in his cell. Before doing so, he hung up a privacy curtain across the back of the cell so as to not expose himself to gallery passersby. Plaintiff's cellmate, Justin Cavazos stood at the cell bars.

20. While Plaintiff was using the toilet, he heard one of the Defendant Williams yell into the cell, "What are you doing back there?" Take that curtain down!" Plaintiff responded that he was making a bowel movement.

21. Plaintiff heard the cell door open, saw somebody identified only as Lt. Williams reach over the top of the curtain and spray him in the eyes, head and torso with a chemical agent. The correction officer identified as Lt. Williams then placed Plaintiff in handcuffs.

22. After placing Plaintiff in handcuffs, the Defendant identified as Lt. Williams maliciously and sadistically punched Plaintiff numerous times and then flung him out of the cell, causing him to slam into the gallery bars.

23. Plaintiff felt himself being punched and kneed in his abdomen and rib area by Defendants Walls and Whitfield as the three escorted Plaintiff down the gallery in handcuffs. Plaintiff only wore a pair of shorts and shower shoes.

24. Though the Incident Report and the Disciplinary ticket generated by Defendant Donald Williams states that Plaintiff's cell was targeted by Intell for contraband and Defendants

Walls and Whitefield were assigned to search Plaintiff's cell, and Defendants Williams, Walls and Whitfield in fact entered the cell, no cell search nor search of Plaintiff's or his cellmate was conducted.

25. Though the Incident Report and the Disciplinary Ticket purports Plaintiff flushed "hooch" down the toilet, no evidence of a bag, bottle or any container from which "hooch" was purportedly poured down the toilet was produced or recovered.

26. On information and belief, Defendants Williams, Whitfield and Walls came to Plaintiff's cell and entered Plaintiff's cell for reasons other than a cell search for alleged contraband.

27. On information and belief, Defendants retaliated against Plaintiff because he has assisted fellow prisoners with civil rights litigation and grievances.

28. Pursuant to Illinois Department of Corrections Rules, "…the transfer of a committed person shall be undertaken with a minimum amount of force. Only when the individual threatens bodily harm to himself, other committed persons or correctional officers my tear gas or other chemical agents be employed to remove him." (Section 501.70 (a))

29. Pursuant to Section 501.70 b), "Prior to use of tear gas or other chemical agents, the committed person shall be informed that such tear gas or other chemical agents will be used unless he complies with the transfer order."

30. According to Defendant Williams' Incident Report, Plaintiff purportedly refused to be "restrained or searched." In other words, Plaintiff refused to be "cuffed up" and submit to a cell search, since according to the Incident Report, a cell search of E-518 is what Whitfield and Walls were assigned to do.

31. Under applicable rules, regulations and laws, correction officers are obligated to

"inform" Plaintiff that "such tear gas or other chemical agents will be used unless he complies with the transfer order."

32. Defendant Donald Williams informed Plaintiff that he was going to use a chemical agent on him.

33. Defendant Donald Williams violated applicable rules and regulations in connection with the use of a chemical agent on Plaintiff. Accordingly, such use of a chemical agent was unlawful, unjustified and done with malicious intent.

34. When Defendants Whitfield, Walls and the Defendant identified as Lt. Williams arrived at Plaintiff's cell, Plaintiff was secured behind a locked cell door and posed no threat to staff, himself or other inmates.

35. Correctional officers are required to give cell occupants a direct order to submit to a cell search and to come to the bars and "cuff-up" prior to opening the cell door to search the cell.

36. If a committed person refuses to submit to a cell search, IDOC procedures provide that tactical teams should be called to film the cell extraction upon conducting it. As correctional officers employed by the State of Illinois, Defendants are obligated to be familiar with such procedures. Such measures are designed to protect staff and inmates.

37. No tactical teams were called.

38. On information and belief, no film of the cell extraction occurred.

39. Pursuant to IDOC Rules, once a chemical agent is used on a committed person, "The committed person shall be instructed by the correctional officer to flush his eyes and skin exposed to the chemical agent with water. If the individual appears incapable of doing so, a member of medical staff present shall perform the task. If no member of the medical staff is

present, the correctional officer shall undertake the procedure."

40. On information and belief, all Defendants were aware of applicable rules and regulations regarding the use of chemical agents.

41. On information and belief, Defendants Donald Williams, as well as Walls, Whitfield and Defendant Malkowski had personal knowledge through chemical agent training that when a chemical agent is delivered, it first attacks the eyes.

42. Plaintiff was unable to see after the chemical agent was sprayed into his eyes.

43. Plaintiff could not see anything from the moment he was sprayed in the eyes with a chemical agent.

44. Defendant Donald Williams or, did not take Plaintiff to the Healthcare Unit, but took him to F-house, segregation unit, where medical staff was not present.

45. While Plaintiff was still blinded in the approximately 10 feet square shower stall, Defendants Williams and Malkowski failed to flush out Plaintiff's eyes and skin exposed to the chemical agent.

46. With no assistance from medical staff or correctional officers, Plaintiff implored Defendant Malkowski to call medical staff to assist him with flushing out his eyes and rinsing the chemical agent off the rest of the affected areas of his body.

47. Despite Plaintiff's cries for medical assistance directed at Defendant Malkowski. Malkowski failed to take reasonable steps to get him medical assistance or to undertake the task of flushing chemical agent from Plaintiff's eyes and body.

48. Defendant Malkowski demanded that Plaintiff use the steaming hot shower water to rinse off chemical agent.

49. Still unable to see, and in excruciating pain, Plaintiff groped around the shower

7

stall searching for the button to turn on the shower water. Desperate for relief Plaintiff stuck his head under the hot water in an attempt to let it run down his forehead and blink his eyes to get the water inside.

50. When the hot water came in contact with Plaintiff's skin it only exacerbated the pain. Several parts of Plaintiff's body, including his head, chest, stomach and genitals were exposed to the chemical agent.

51. On information and belief, at the time of the incident, Defendant Malkowski had training in the use of chemical agents.

52. On information and belief, Defendant Malkowski knew that the failure to provide Plaintiff with appropriate medical care following exposure to the chemical agent would result in extreme pain and suffering for the Plaintiff and could result in permanent injury.

53. On information and belief, each of the Defendants, at the time of the incident, had training in the use of chemical agents.

54. On information and belief, each of the Defendants knew that the failure to provide Plaintiff with appropriate medical care following exposure to the chemical agent would result in extreme pain and suffering for the Plaintiff and could result in permanent injury.

55. Each of the Defendants had the opportunity to obtain appropriate medical care for Plaintiff or otherwise provide appropriate medical care to Plaintiff after he was exposed to the chemical agent.

56. Each of the Defendants failed to obtain appropriate medical care for Plaintiff or otherwise provide appropriate medical care to Plaintiff after he was exposed to the chemical agent.

57. Defendants' failure to provide immediate medical care resulted in the chemical

agent further spreading throughout Plaintiff's body.

58. Defendants' deliberate indifference to Plaintiff's serious medical needs resulted in protracted pain and suffering.

59. Had Defendants promptly escorted Plaintiff to the Healthcare Unit, medical staff would have provided appropriate facilities to remove/flush the chemical agent from Plaintiff and mitigated any further injury to Plaintiff.

60. Defendants' indifference to Plaintiff's pain and suffering was done with malicious intent.

61. Defendants knowingly ignored Plaintiff's injury caused by exposure to the chemical agent.

62. In particular, despite Plaintiff's please, Defendant Malkowski took no reasonable steps to provide Plaintiff with medical treatment.

63. Despite repeated requests, Plaintiff never was treated by medical staff for his exposure to a chemical agent.

64. In addition to his exposure to chemical agents, the excessive force to which Plaintiff was exposed by Defendants Whitfield and Walls, and Williams resulted in injuries to Plaintiff's shoulder and ribs.

65. Despite repeated requests for medical treatment, particularly to Defendant Malkowski, Plaintiff was denied any treatment for at least two months. The force applied by Defendants Donald Williams, or, Whitfield and Walls was unjustified, malicious, sadistic and intended only to inflict pain, suffering and cruel and unusual punishment.

66. The Eighth Amendment forbids the unnecessary and wanton infliction of pain. The force applied by Defendants Williams, Walls and Whitfield was not applied in a good faith

effort to maintain or restore discipline, but was applied instead was applied in bad faith, was malicious and sadistic and inflicted for the sole purpose of causing pain and harm.

67. Defendants owed Plaintiff a duty under the Eight Amendment to the U.S. Constitution to avoid unnecessary and wanton infliction of pain.

68. Defendants' actions all were conducted under color of state law.

69. Defendants' actions were undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

70. Plaintiff has exhausted all available remedies regarding the matters described in this complaint. On September 25, 2013 Plaintiff filed a grievance asking for compensatory and punitive damages as well as expungement of disciplinary report and guilty finding. Grievance was denied by the Chief Adm. Officer. Plaintiff filed an appeal to the Director which was subsequently denied on October 8, 2014

WHEREFORE, Plaintiff requests that this Court enter judgment in his favor and against Defendant declaring that Defendants have violated Plaintiff's rights under the United States Constitution and 42 U.S.C. § 1983, compensatory damages, punitive damages, attorney's fees, costs and any other relief this Court deems appropriate.

Plaintiff demands trial by jury.


Dated: February 20, 2023

Respectfully submitted,

**DANIEL SCOTT**

By: /s/ Kevin Tottis
Attorney for Plaintiff

                                                Kevin Tottis (ARDC No. 6193853)
                                                ktottis@tottislaw.com
                                                TOTTISLAW
                                                401 N. Michigan Avenue
                                                Suite 530
                                                Chicago, IL 60611
                                                Tel: (312) 527-1400
                                                Fax: (312) 589-7192